**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| WENDY F., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 2:25-CV-45-JSD |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION</u>**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Wendy F. ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*. The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (ECF No. 6.) For the reasons stated herein, the Court affirms the Commissioner's denial of Plaintiff's application.

### I.   BACKGROUND

On March 10, 2023, Plaintiff applied for DIB, alleging disability beginning February 4, 2020, based on fibromyalgia, chronic vertigo, ear infections, stroke, COVID-19, chronic migraines, broken back, asthma, post-traumatic stress disorder (PTSD), fall risk, carpal tunnel, bad knee, herniated disc in back, GERD, hormonal imbalances, Raynaud's syndrome, and hyperglycemia. (Tr. 16, 84, 211.) Her application was initially denied on August 31, 2023, (Tr. 98-101) and denied upon reconsideration on October 23, 2023 (Tr. 109-15). Thereafter, Plaintiff filed

a Request for Hearing by Administrative Law Judge (ALJ), received on November 21, 2023. (Tr. 16, 116.)

ALJ Matthew Dawson held a telephone hearing on April 16, 2024. (Tr. 40, 42.) Plaintiff testified about her activities of daily life as well as her treatment history and symptoms related to her back, knee, vision, migraines, fibromyalgia, anxiety, panic attacks, PTSD, carpal tunnel, and breathing issues. (Tr. 51-73.) Specifically, Plaintiff testified as follows: she fell in February 2020 and hurt her head and back, but she did not seek treatment until October 2020 (Tr. 51-55); since falling, her migraines and panic attacks have worsened (Tr. 56-57, 64-65); she has not driven since 2020 due to vision problems (Tr. 55); she started using a cane daily in 2020 and she occasionally uses a walker (Tr. 61-62, 70); she was previously hospitalized with COVID-19, which caused breathing issues requiring the use of a nebulizer and inhaler (Tr. 68-69); she has never been hospitalized or had inpatient treatment for any psychiatric reason (Tr. 65); she has no issues bathing because she can sit in the shower (Tr. 71); and her husband helps her with daily-life-activities that require bending over, but she is able to help cook while sitting (71-72). Plaintiff also testified to using relatively conservative treatment, including ice/heat, over-the-counter pain medication, and rest. (Tr. 52, 54, 59.) She stated that she is allergic to most pain medication; and when asked what her side-effects were to migraine medications, she testified that the medications made her migraines worse. (Tr. 52, 57.)

The ALJ issued an unfavorable decision on May 23, 2024. (Tr. 16-32.) Plaintiff timely filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council (Tr. 9-12), which was denied on April 21, 2025 (Tr. 1-6). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

The Court accepts the facts as set forth in the parties' briefing. The Court will cite specific portions of the transcript as needed to address the parties' arguments.

## II.    STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Social Security Act, a claimant must prove he is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Social Security Act, a person is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. § 404.1520(a); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a

3

severe impairment, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. § 404.1520(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. § 404.1520(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. § 404.1545(a)(1); *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given

4

the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. 20 C.F.R. § 404.1560(c)(2); *Moore*, 572 F.3d at 523; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012).

## III.    THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that: Plaintiff had not engaged in substantial gainful activity since February 4, 2020; Plaintiff had the severe impairments of obesity, asthma, migraine headaches, osteoarthritis of the left knee, degenerative disc disease, osteoarthritis of the hips, osteoarthritis of the right thumb, cerebrovascular accident with resulting exotropia, and myopia; and Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 19, 23.) The ALJ also found Plaintiff's mental impairments of PTSD, depression, and anxiety were non-severe. (Tr. 21.)

The ALJ next found that Plaintiff had the RFC to:

perform sedentary work as defined in 20 CFR 404.1567(a) except that she can only occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs. She can never climb ladders, ropes, or scaffolds. She can tolerate occasional exposure to atmospheric conditions. She can have no exposure to unprotected heights or moving mechanical parts. She can frequently handle, finger, and feel. She requires a cane to walk to and from the work station. She can perform no tasks requiring far visual acuity, but she retains sufficient visual acuity, depth perception, and field of vision to handle objects of all sizes and to avoid ordinary hazards in the workplace, such as boxes on the floor, doors ajar, or approaching people or vehicles.

(Tr. 25.) The ALJ further found that Plaintiff was capable of performing past relevant work as an insurance customer service clerk and an end user consultant, which are both classified as sedentary work. (Tr. 30-31.) Thus, the ALJ found that Plaintiff was not under a disability, as defined in the Act, from February 4, 2020, through the date of the ALJ's decision. (Tr. 31.)

5

IV.    **DISCUSSION**

Plaintiff challenges the ALJ's decision on two grounds: (1) the ALJ failed to properly evaluate medical opinion evidence; and (2) the ALJ's finding of non-severe mental impairments is not supported by substantial evidence.

A.    **Standard for Judicial Review**

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see* 42 U.S.C. § 405(g). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted); *see Biestek*, 139 S. Ct. at 1154 ("Substantial evidence…means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting *Consol. Edison*, 305 U.S. at 229)).

In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the Court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two

6

inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

### B.  ALJ's Evaluation of Medical Opinion Evidence

Plaintiff contends that the ALJ failed to properly evaluate the medical opinions of her treating physician, Dr. Thomas Bragg, in finding his opinion unpersuasive. (ECF No. 23 at 2-6.) She argues that the ALJ's discussion of the consistency and supportability factors was inadequate. (*Id.* at 2-5.) Plaintiff argues that the ALJ further erred in selectively crediting Dr. Bragg's opinion by incorporating several of his functional limitations in the RFC, despite finding his opinion unpersuasive. (*Id.* at 5-6.) In response, the Commissioner argues that the ALJ properly evaluated the persuasiveness factors when considering the ALJ's entire opinion and the record as a whole; and the ALJ accounted for Plaintiff's impairments that were corroborated by the record, including limitations at issue in Dr. Bragg's restrictive RFC finding. (ECF No. 26 at 3-7.) This Court agrees with the Commissioner that the ALJ did not err in evaluating Dr. Bragg's opinion.

The ALJ's treatment of medical opinion evidence is governed by 20 C.F.R. § 404.1520c. Under this Regulation, ALJs are to consider all medical opinions equally and evaluate their persuasiveness according to several specific factors, including supportability, consistency, the medical source's relationship with the claimant, specialization, and other factors such as the source's understanding of the Social Security Administration's disability policies and their familiarity with other evidence in the claim. 20 C.F.R. § 404.1520c(c). "The first two factors – supportability and consistency – are the most important." *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022) (citing 20 C.F.R. § 404.1520c(a)). ALJs must "articulate in [their] determination or decision how persuasive [they] find all of the medical opinions and all of the prior administrative medical findings in [the] case record." 20 C.F.R. § 404.1520c(b). The ALJ's reasoning needs to

be "clear enough to allow for judicial review." *Grindley v. Kijakazi*, 9 F.4th 622, 631 (8th Cir. 2021).

The ALJ discussed the supportability of Dr. Bragg's opinion as follows: Dr. Bragg's "extreme limitations are, at most, only partially supported by his treatment notes," which the ALJ cited and discussed earlier in the decision; Dr. Bragg's conclusions on some matters, such as sitting for less than 2 hours per workday, have no support from his clinical findings and observations; and the laboratory results Dr. Bragg provided in support of his opinions have no clear connection to the limitations he imposed.[1] (Tr. 25-30, 616-734, 845-921.) Through this discussion and review, the ALJ adequately articulated the supportability of Dr. Bragg's opinion, sufficiently explaining its supportability finding to allow for this Court's review. *See Grindley*, 9 F.4th at 631; *Starman v. Kijakazi*, No. 2:20-CV-00035-SRC, 2021 WL 4459729, at *4 (E.D. Mo. Sept. 29, 2021) (in articulating supportability, ALJs may consider, for example, whether the physician's treatment notes support the opinion and whether the physician provided a detailed explanation for his or her opinion) (listing cases); *Elizabeth A. v. Saul*, No. 20-cv-744 (HB), 2021 WL 931211, at *6 (D. Minn. Mar. 11, 2021) (court reviews ALJ's analysis in light of entire decision) (citations omitted).

As to consistency, the ALJ explained that "the degree of limitation indicated by Dr. Bragg's opinions are inconsistent with [Plaintiff's] activities of daily living and the many normal physical examination results, both of which were summarized previously in this decision." (Tr. 30.) Earlier in the decision, the ALJ discussed that the objective medical evidence showed normal tone and

---

[1] Plaintiff argues that the ALJ improperly interpreted medical evidence, rather than articulating supportability, in finding that the cited laboratory reports had no clear connection to the limitations. (ECF No. 23 at 4.) To the contrary, whether Dr. Bragg cited clinical and laboratory results to support his conclusions, and whether he sufficiently explained those conclusions based on the cited findings, speak directly to the supportability of his opinion. *See* 20 C.F.R. § 404.1520c(c)(1) (the more a source's objective evidence and explanations support a medical opinion, the more persuasive the opinion.).

8

muscle strength; that Plaintiff ambulated with an independent and normal gait; and that Plaintiff had normal grip and pinch strength, intact coordination, intact fine motor skills, and normal range of motion in the hands and fingers. (Tr. 25-28.) The ALJ also noted that Plaintiff's treatment notes contained relatively few complaints of headaches compared to the alleged frequency, most of which coincided with acute illnesses; thus, limitations, such as additional breaks, off-task behavior, or excessive absences, are not warranted by the frequency and severity of Plaintiff's migraines as medically documented. (Tr. 28-29.) The ALJ further discussed that Plaintiff could use her fingers and hands well enough to knit, crochet, draw, complete paperwork, use a computer, text with her phone, play games on her phone, and bathe herself. (Tr. 28.) In contrasting Dr. Bragg's opinions with objective medical evidence and Plaintiff's activities of daily life, as discussed in relation to Plaintiff's condition earlier in the decision, the ALJ adequately articulated its consideration of consistency. *See* 20 C.F.R. § 404.1520c(c)(2) (to assess consistency, the ALJ is to compare the medical opinion with "evidence from other medical sources and nonmedical sources in the claim"); *Collins v. Kijakazi*, No. 6:20-CV-03237-MDH, 2021 WL 3909670, at *3 (W.D. Mo. Aug. 31, 2021) (ALJ properly considered consistency of medical provider's opinion by comparing the provider's opinions to medical records, treatment history, and activities of daily life); *see also Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009) (the basis of the ALJ' s finding may be "apparent from the opinion's entirety"); *Trosper v. Saul*, 2021 WL 1857124, at *6 (E.D. Mo. May 10, 2021) ("When the decision is read in its entirety, instead of only the single paragraph…in isolation, it shows the ALJ properly considered the record evidence as whole when evaluating the supportability and consistency of the opinion.").

The Court finds that the ALJ did not selectively credit Dr. Bragg's opinion as Plaintiff contends because the ALJ did not rely on Dr. Bragg's opinion in determining the RFC, but he

9

instead relied on the medical opinion of consultive examiner Dr. Benjamin Gill, medical evidence, and Plaintiff's activities of daily life.[2] *See Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is free to accept some, but not all, of a medical opinion….[a]nd the ALJ is not required to explicitly...reconcile every conflicting shred of medical evidence."); *see also McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) ("The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations."). The Court also disagrees with Plaintiff's contention that Dr. Gill's recommended limitations on standing and walking are "entirely consistent" with Dr. Bragg's recommendations. (ECF No. 23 at 5.) As the ALJ explained, Dr. Bragg opined for "extreme" walking and standing limits (5 minutes at a time and less than 2 hours in an 8-hour workday), while Dr. Gill opined, without using vocationally defined terms, that Plaintiff's ability to walk and stand were "significantly impaired." (Tr. 30, 756, 939.) The ALJ also sufficiently explained his rejection of the recommended sitting limitations, finding that Dr. Bragg's sitting limitation (10 minutes at a time and less than 2 hours in a 8-hour workday) had no support from his clinical findings and observations, was not clearly connected to the laboratory results, and was inconsistent with Plaintiff's activities of daily life; and finding that Dr. Gill's sitting limitation (significantly impaired) was not supported by his physical examination and interview of Plaintiff, as he observed no abnormalities that would support the need to limit sitting, and there is no other evidence consistent with such a limitation. (Tr. 30, 756, 939.)

For all of these reasons, Plaintiff fails to show that the ALJ erred in evaluating Dr. Bragg's medical opinion.

---

[2] The Court notes that Plaintiff does not challenge the physical RFC determination nor does she argue that the ALJ's RFC determination was not supported by substantial evidence. *See Despain v. Berryhill*, 926 F.3d 1024, 1027 (8th Cir. 2019) (claimant's burden to establish RFC).

### C.  ALJ's Evaluation of Mental Impairments

Plaintiff next contends that the ALJ's finding that Plaintiff's mental impairments are non-severe is not supported by substantial evidence because the ALJ improperly dismissed the only two mental health opinions, selectively characterized the record in evaluating the degree of Plaintiff's mental health limitation, and failed to include any mental limitations in the RFC. (ECF No. 23 at 6-14.) In response, the Commissioner argues that the ALJ properly evaluated Plaintiff's mental impairments, the ALJ's finding that the mental impairments were non-severe was supported by substantial evidence, and the ALJ was not required to discuss the mental impairments in the RFC. (ECF No. 26 at 7-15.) This Court agrees with the Commissioner and finds that substantial evidence supports the ALJ's determination that Plaintiff's mental impairments of PTSD, anxiety, and depression are non-severe.

In evaluating the severity of a claimant's mental impairments, the ALJ is required to use a "special technique." *Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013) (citing 20 C.F.R. § 404.1520a); *Haggett v. Colvin*, No. 1:12-CV-169-NAB, 2014 WL 107847, at *2 (E.D. Mo. Jan. 10, 214). As relevant, "[t]he special technique analysis requires…rating the degree of functional limitation resulting from the impairment." *Haggert*, 2014 WL 107847, at *2 (citing 20 C.F.R. § 404.1520a(b)). The ALJ is to rate the degree of the claimant's limitation based on the four following broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. *See Rehkop v. Saul*, No. 1:20-cv-00007 SRC, 2021 WL 1060110, at *3; 20 C.F.R. § 404.1520a(c)(3). "After the degree of functional limitation from the impairment is rated, the severity of the mental impairment is determined." *Haggert*, 2014 WL 107847, at *2 (citing 20 C.F.R. § 404.1520a(d)). "An impairment or combination of impairments is not severe if it does

11

not cause more than a minimal limitation on an individual's ability to perform physical or mental basic work activities." *Draves v. Saul*, No. 19-05026-CV-SW-GAF-SSA, 2020 WL 13517528, at *2 (W.D. Mo. Oct. 6, 2020) (citing *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

### a.   *ALJ's Evaluation of Mental Health Opinions*

Plaintiff first challenges the ALJ's evaluation of the mental health opinions of Plaintiff's therapist Ann Elliot, LCSW, and psychological consultative examiner Jason Glass, Psy.D. (ECF No. 23 at 7-9.) Ms. Elliot opined that "[p]hysically and emotionally, [Plaintiff] is very limited in her ability to do anything for very long" and that "she could not be expected to put in several hours a day at a job in which she would have to interact with others or do structure[d] activities." (Tr. 21, 952.) Dr. Glass opined that Plaintiff had (1) marked impairment in overall functioning, the ability to adapt to changes, and mental flexibility; (2) moderate impairment in sustained concentration and persistence in simple and repetitive tasks, retaining information, and effectively carrying out multi-step, complex instructions; (3) mild impairment in the ability to reason and make work-related decisions; and (4) no limitation in managing her funds and affairs. (Tr. 21, 770-71.) The ALJ found both Dr. Glass's and Ms. Elliot's opinions unpersuasive. (Tr. 21-22.)

Starting with Ms. Elliot, Plaintiff argues that the ALJ discounted Ms. Elliot's opinion without substantive engagement with her clinical observations, namely Ms. Elliot's observation that Plaintiff did not complete the 12-week therapy protocol because she was unable to maintain focus for 1-hour sessions. (ECF No. 23 at 9; Tr. 21, 952.) On the contrary, the ALJ properly considered Ms. Elliot's opinion in finding it unpersuasive, adequately explaining the supportability and consistency factors and specifically addressing Ms. Elliot's findings as to Plaintiff's ability to focus. (Tr. 21.) In reviewing the persuasiveness of Ms. Elliot's opinion, the ALJ first noted that Ms. Elliot is not an acceptable medical source as defined in 20 C.F.R. § 404.1502(a), she had only

12

been treating Plaintiff since September 2023, and she did not state her opinions in clear vocational terms. (Tr. 21.) The ALJ further explained that "[w]hile [Ms. Elliot] presumably conducted mental status examinations of [Plaintiff], they were not provided, making it impossible to determine if her clinical findings and observations support her opinions" and "[t]he explanation she provided in her opinion statement cited to two examples of poor focus during sessions but did not identify any other observations or findings." (Tr. 21, 774, 923, 952.) The ALJ thus concluded that Ms. Elliot's opinions lacked support. (Tr. 21.) In finding Ms. Elliot's opinion inconsistent with the record, the ALJ explained that treatment notes from other medical personnel did not contain the type of significant clinical findings that would be consistent with the extreme limitations suggested by Ms. Elliot. (Tr. 21). In addition, the ALJ found Ms. Elliot's opinion inconsistent with Plaintiff's ability to testify at the hearing, despite testifying to having a panic attack, and the conservative nature of her mental health treatment. (Tr. 21.) Through this discussion, the ALJ sufficiently engaged with Ms. Elliot's opinions and adequately articulated supportability and consistency in finding her opinions unpersuasive, and this finding is supported by substantial evidence in the record. *See* 20 C.F.R. § 404.1520c(c)(1), (c)(2).

Turning to Dr. Glass, Plaintiff first argues that the ALJ erred in determining that his opinion is unpersuasive because the ALJ did not discuss Dr. Glass's finding that Plaintiff was unable to count backwards from 100 by increments of 7. (ECF No. 23 at 8; Tr. 769.) Plaintiff specifies that this is a standard test to assess memory, attention, and concentration; and the ALJ should have considered it in rejecting Dr. Glass's opinions. (ECF No. 23 at 8.) Although the ALJ did not address this specific finding, the ALJ thoroughly reviewed Dr. Glass's medical opinions. *See McClure v. Saul*, No. 1:20-CV-150-SNLJ, 2021 WL 3856577, at *7 (E.D. Mo. Aug. 30, 2021) ("[T]he regulation does not require an ALJ to address each and every part of a medical opinion to

13

show that the entire opinion was properly considered…); *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022) ("[T]he ALJ is not required to explicitly...reconcile every conflicting shred of medical evidence."). Indeed, in evaluating the supportability and consistency of Dr. Glass's medical opinion, the ALJ found as follows: Dr. Glass's opinions are not supported by his notes, but rather are contradicted by his examination findings of intact memory and concentration, good effort and persistence, average intellectual functioning, and intact abilities to do simple mathematic calculations and reason logically; given the relatively benign results of his examination, Dr. Glass appears to have largely relied upon Plaintiff's self-reported allegations and statements in forming his opinions; and, in terms of other evidence of record, Plaintiff's conservative treatment history and her good response to treatment are inconsistent with Dr. Glass's opinions. (Tr. 21-22.) *See* 20 C.F.R. § 404.1520c(c)(1), (c)(2).

Plaintiff challenges the ALJ's consideration of her conservative treatment history and good response to treatment because Plaintiff told Dr. Glass that she is allergic to most mental health medications. (ECF No. 23 at 8-9.) The Court is not persuaded by this argument. Although Plaintiff told Dr. Glass that she is allergic to most medications, this is not supported by any medical evidence in the record. Indeed, Dr. Glass's opinion provides no citation to any medical evidence supporting Plaintiff's reports of allergies. Even before this Court, Plaintiff can point to no evidence in the record supporting Plaintiff's vague reports of allergies to most medications. Regardless, the ALJ did not err in considering the consistent evidence in the record of Plaintiff's conservative treatment history and good response to treatment. *See Wildman v. Astrue*, 596 F.3d 959, 965 (8th Cir. 2010) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling." (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004))).

14

### b. *ALJ's Consideration of Functional Factors*

Plaintiff argues that the ALJ's findings of mild limitations in each of the four functional areas are not supported by substantial evidence. (ECF No. 23 at 10-13.) In response, the Commissioner argues that the ALJ's findings are supported by substantial evidence, and Plaintiff's arguments essentially advocate for the Court to reweigh the evidence. (ECF No. 26 at 7-11.) This Court agrees with the Commissioner and finds that substantial evidence supports the ALJ's finding that Plaintiff's mental impairments were mild in degree and non-severe.

As to the first functional factor – understanding, remembering, or applying information – the ALJ found mild limitations considering the following: although Plaintiff testified to memory loss and brain fog that make it difficult to express herself or complete tasks, her mental status examinations have shown intact memory; she exhibits good judgment, normal thought process, intact logical reasoning, and average intellectual functioning; no medical personnel have observed word finding difficulties, extended response times, or signs of significant neurocognitive issues due to her past stroke; and Plaintiff is able to prepare meals, shop by computer, handle a savings account, manage her finances and medications, knit, crochet, watch videos, follow written and spoken instructions, and play games. (Tr. 22.)

As to the second functional factor – interacting with others – the ALJ found that Plaintiff had no limitation considering the following: although Plaintiff testified to panic attacks around crowds, her treatment notes document only infrequent complaints of panic attacks and show that her anxiety improves with medications; there is evidence that Plaintiff is generally able to maintain appropriate behavior and conversation in more limited social settings, such as at the hearing and medical appointments; and both she and her husband deny that she has problems interacting with family, friends, neighbors, or others. (Tr. 22.)

As to the third functional factor – concentrating, persisting, or maintaining pace – the ALJ found mild limitations considering the following: although Plaintiff testified to being distractable and having poor concentration, at the hearing she was able to follow the questions asked of her and formulate appropriate responses thereto without undue delay or difficulty despite claiming to be having a typical panic attack at the time; she is able to assist with meal preparation and prepare some meals, shop by computer, handle a saving account, knit, crochet, garden, play games, watch videos, follow instructions, use social media, and text on her phone; deficits in concentration, attention, or focus have not generally been observed during mental status examinations; and during the psychological consultative examination, the claimant demonstrated intact concentration, the ability to do simple mathematic calculations, and good persistence and effort. (Tr. 22-23.)

As to the fourth functional factor – adapting or managing oneself – the ALJ found mild limitations considering the following: Plaintiff's presentation at the hearing and medical appointments shows that she is capable of controlling her behavior and emotions; she has a variable ability to maintain her appearance and personal hygiene; she reports panic attacks and occasional difficulties handling stress, but neither the panic attacks nor stress have led the claimant to seek emergency room or inpatient care since the alleged onset date; and she does not report psychotic symptoms or suicidal thoughts. (Tr. 23.)

After reviewing each of the functional factors in light of the evidence in the record, the ALJ determined that because the mental impairments do not cause more than mild limitations and the evidence does not otherwise indicate that there is more than a minimal limitation in Plaintiff's ability to do basic work activities, her mental impairments are non-severe. (Tr. 23.)

This Court finds that the ALJ's findings as to the degree and severity of Plaintiff's mental impairments are supported by substantial evidence. As demonstrated above, the ALJ thoroughly

16

reviewed medical and nonmedical records in evaluating Plaintiff's mental impairments, providing citations to the record throughout the discussion. Based on this evidence and the ALJ's detailed review of each functional factor, the ALJ's conclusion – that Plaintiff's impairments cause no more than mild or minimal limitations – is within a reasonable "zone of choice." *See Consol. Edison*, 305 U.S. at 229 ("Substantial evidence … means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.); *Nelson v. Colvin*, No. 11-3292-CV-S-DPR, 2013 WL 2646698, at *1 (W.D. Mo. July 12, 2023) ("[A] court should not disturb an ALJ's denial of benefits if the decision 'falls within the available zone of choice.' A decision may fall within the 'zone of choice' even where the court 'might have reached a different conclusion had [the court] been the initial finder of fact.'" (quoting *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011))); *see also Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016) (even if substantial evidence in record could have supported contrary outcome, this court must affirm ALJ's decision if there is also substantial evidence to support it).

The Court further finds that Plaintiff's challenges to the mental impairment determination amount to a request to reweigh the evidence, as she merely argues that other evidence in the record supports a different conclusion than reached by the ALJ. (ECF No. 23 at 10-13.) The Court declines to reweigh the evidence or substitute its judgment for the ALJ's substantially supported conclusions. *See Adair v. Saul*, 816 Fed.Appx. 26, 27 (8th Cir. 2020) (per curiam) ("In reviewing the ALJ's decision, we do not reweigh the evidence…. Rather, we will affirm if there is substantial evidence in the record as a whole, even if inconsistent conclusions may be drawn from the evidence, and even if we may have reached a different outcome ourselves.") (quotations omitted); *see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) ("We may not reverse that

17

decision simply because we would have reached a different conclusion than [the Commissioner] or because substantial evidence supports a contrary conclusion.").

### c.  Lack of Mental Impairments in RFC

Plaintiff finally argues that the ALJ erred in not discussing her non-severe mental limitations in the RFC section of the decision. (ECF No. 23 at 13-14.) In response, the Commissioner argues that the ALJ was not required to include mental impairments in the RFC because the ALJ found no severe mental impairments. (ECF No. 26 at 14-15.) This Court agrees with the Commissioner.

As argued by the Commissioner, District Courts in the Eighth Circuit have specifically and repeatedly found that an ALJ is not required to discuss mental limitations in the RFC if there are no severe mental impairments. *See e.g., O'Riley v. Saul*, No. 19-00562-CV-W-ODS, 2020 WL 3497467, at *2 (W.D. Mo. June 29, 2020) ("When the ALJ finds no severe mental impairments, []he is not required to discuss any mental limitations in the RFC."); *Crissey v. Saul*, No. 4:20-CV-00476-WJE, 2021 WL 2624514, at *4 (W.D. Mo. June 25, 2021); *McRoy v. Berryhill*, No. 6:17-CV-03373-DGK-SSA, 2018 WL 6584481, at *2 (W.D. Mo. Dec. 14, 2018). Because the ALJ here found, at most, mild limitations in the functional factors, he was not required to include RFC limitations for Plaintiff's non-severe mental impairments. *See Johnson v. Berryhill*, No. 4:17-CV-0416-DGK-SSA, 2018 WL 2336297, at *2 (W.D. Mo. May 23, 2018) ("Because the ALJ found [p]laintiff did not suffer from a severe mental impairment, *i.e.*, that her mental symptoms did not cause more than a minimal limitation in her ability to do basic work activities, he did not need to find any mental limitations on the RFC were necessary"). Moreover, any error in failing to discuss the mental impairments in the RFC amounts, at most, to a deficiency in opinion writing, without bearing on the outcome of this case. *See Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992)

18

(an arguable deficiency in opinion-writing technique is not grounds for reversal when that deficiency had no bearing on the outcome).

For all of these reasons, Plaintiff fails to show that the ALJ erred in evaluating Plaintiff's mental impairments.

### V.   CONCLUSION

Based upon the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED.**

JOSEPH S. DUEKER
UNITED STATES MAGISTRATE JUDGE

Dated this 15th day of July, 2026.